ARUNDEL-BROOKS CONCRETE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101026. Promulgated September 25, 1941.

*William S. Hammers, Esq.*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

KERN: The issue here is clear-cut—whether the $20,000 contributed by another corporation, the Maryland Slag Co., to the erection of petitioner's concrete mixing plant, or approximately one-half its cost, should be included, as petitioner contends, in the cost of the plant for purposes of the depreciation deduction which may be taken by the petitioner. Respondent contends that it may not be so included and argues, in the alternative, that, if the petitioner may deduct on the basis of the total cost, then this sum contributed by the Maryland Slag Co. constituted income to petitioner in the year 1937 when it was contributed.

A third corporation, the Arundel Corporation, was involved. It owned all of petitioner's capital stock and 25 percent of the capital stock of the Maryland Slag Co. It also had a hand, though not a controlling one, in the directorates of petitioner and the Maryland Slag Co., for two of its directors were also on the boards of each of these corporations.

The Maryland Slag Co. had an exclusive right for 15 years to remove slag from the Bethlehem Steel Co.'s blast furnaces at Sparrows Point, and this slag could be used in coarse aggregate concrete. It had no sales organization, but this was taken care of by Arundel. Petitioner agreed with the Maryland Slag Co. to erect the concrete mixing plant in question, and that company agreed to share the cost of its erection with petitioner. It was obviously to its interest to do so, as petitioner points out on brief, for it thus got another outlet for its slag. Petitioner further argues that in this posture of affairs it can not be said that petitioner gave any consideration for the $20,000 contribution made by the Maryland Slag Co. to the cost of the concrete plant.

Respondent contends (1) that "cost", as used in the applicable section, section 113 (a), Revenue Act 1936 (the same basis to be employed for depreciation under section 114 (a)), means the cost to the taxpayer, and, in the alternative, (2) that the contribution by the Maryland Slag Co. to building the plant constituted income to petitioner. The basis being established, depreciation is allowable under section 23 (1). Since we agree with respondent on the first issue, we put aside the other, with its discussion of capital contributions, under the doctrine of *Edwards* v. *Cuba Railroad Co.*, 268 U. S. 628, and related cases.

The principle involved is fundamental. Deductions from income allowed under the statutes have, and have always had, a direct relation to the production of income. Taxes and interest are allowed generally, whether or not incurred in the taxpayer's effort to make money, but all expenses and losses are strictly limited to those aris-

ing out of the production of income. There is, it is true, one exception among losses, where it arises from fire or other casualty, and is not compensated by insurance; but this exception, conceded by Congress because of the peculiar hardship which would otherwise result, serves merely to emphasize the rule. The loss allowed for wear and tear is no exception to the general rule, for depreciation is limited to property used in the trade or business. A man may own two houses and live in one and rent the other, but he may claim depreciation only on the house which produces income.

Starting, then, with the proposition that deductions generally, and those for depreciation specifically, bear a direct relation to the production of income and are limited to property so employed, the next step follows naturally, that the basis of depreciation of such property must bear some relation to the money embarked in the enterprise. We find that this is so, and that "cost" has been taken as the basis. Conceivably value might have been taken instead of cost. Such a standard would have borne a reasonable relation to the income or return on the investment, but value is a fluctuating standard and, even if fixed as of a basic date, would be a difficult one to determine. Congress was trying to adjust the tax burden equitably by allowing for the wasting of assets used in the production of income, and if value were an impracticable standard, cost would certainly serve as fairly for all purposes arising after March 1, 1913, as to which the constitutional objection was not to be considered. If a taxpayer received a return through depreciation of the cost of his wasted asset, he could not fairly complain because he had not received a return of its value. Cost would at least represent what the taxpayer had invested in the business, and as of a basic date, cost would ordinarily approximate value. Divergencies between cost and value would no doubt occur, but a rule suitable for the great majority of cases must serve for all.

With these statutory premises accepted, that the depreciation deduction is allowable only for assets used to produce income and that the basis of that deduction is cost, the conclusion seems inevitable that cost as a basis must mean cost to the taxpayer claiming the deduction. It is his income which is being taxed, and the equitable relief represented by the depreciation deduction which is extended by the grace of Congress to reduce gross or apparent gains for tax purposes to actual, or net, gains is a relief in each instance extended to him as taxpayer, with a direct relation to the assets which he is using in the business and with a direct relation to the money which he has risked in acquiring the asset so used. Once Congress decided that cost was to be the proper basis for depreciation and not value, there would be no possible ground for doubt that it meant cost to the taxpayer. Value is a quality which inheres in the thing itself, and, of course, fluctuates with it; cost imports a relation between the thing

and its purchaser and as between them it is forever fixed. Cost, therefore, has no meaning apart from the purchaser, and, since a deduction has no meaning apart from the taxpayer claiming it, the cost spoken of by the statute must mean the taxpayer's cost and no other. Any other interpretation, we conceive, would stultify the whole theory of statutory deductions.

We have said so much on this elemental question for the reason that, being elemental, it has generally been tacitly assumed in our own decisions. Inarticulately assumed, it might always be inferred, but to meet the taxpayer's argument here, the assumption should be explicitly stated so as to refute the fundamental fallacy of the argument. Citation of cases is unnecessary to support a conclusion so obvious. Where Congress intended that the cost of the asset to another than the taxpayer should be taken as the basis for gain or loss, it said so in unequivocal terms, as in the case of gifts *inter vivos* or by trust, where the donor's basis is to be used to prevent evasion. Secs. 113 (a) (2), (3).

We must conclude, therefore, that for depreciation purposes the cost of the concrete plant was its cost to the petitioner alone, and the $20,000 contributed by the Maryland Slag Co. to build it is irrelevant.

The only question left is whether half of the plant had a depreciable basis as a gift made to petitioner by the Maryland Slag Co. We think not. The petitioner negatives such a conclusion when he says on brief:

* * * The Maryland Slag Company was interested in having petitioner erect the mixing plant at Sparrows Point because, if located there, processed slag would have to be used for coarse aggregate and it could sell its product to petitioner; and, as an inducement to petitioner to locate the plant there, it agreed to contribute towards the cost of erecting the plant. There was no consideration passing to it in exchange for such contributions as it had agreed to make to petitioner, other than the benefit it would derive from obtaining another customer for its product, or an increased outlet for its processed slag. * * *

Moreover, nothing in the record indicates a gift, but quite the contrary. Throughout the language used is that of an agreement between the petitioner and the Maryland Slag Co. for mutual profit and advantage, and for the accomplishment of a business purpose desirable to both parties.

There was no gift here, so that there is no need to adjust the depreciable cost basis of the concrete plant to petitioner by the addition of its cost basis to petitioner's donor. We hold accordingly that petitioner is entitled to depreciate only the amount of $19,766.13, which it actually expended in erecting the plant.

*Decision will be entered under Rule 50.*